UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-03373-JRS-TAB |
| GREGORY, et al. | ) ) ) |
| Defendants. | ) |

**Order Discussing Motion for Preliminary Injunction**

Plaintiff, Jason Seth Perry ("Perry") initiated this lawsuit alleging that his medical providers have been deliberately indifferent to a variety of medical conditions. He has filed several motions for a preliminary injunction and temporary restraining order. He seeks injunctive relief in the form of treatment for chronic Hepatitis C ("HCV") and evaluation by various medical specialists for other alleged medical conditions. More specifically, Perry requests that this Court order the defendants to send him to be evaluated by a qualified ear, nose and throat specialist ("ENT"); liver specialist; heart specialist; lung specialist; and brain specialist. Dkt. 105, p. 2. Mr. Perry also generally requests treatment for hepatitis A and hepatitis B.

**I. Preliminary Injunction Standard[1]**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). *"To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements."* *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal

---

[1] Perry's motions are labeled as motions for Temporary Restraining Order and a Preliminary Injunction. Because the defendants have had the opportunity to respond to his motions, they are properly treated as motions for preliminary injunction. Fed. R. Civ. P. 65.

quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then proceed to the balancing phase of the analysis. *Id.* In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.*

## II. Facts

Perry is currently incarcerated at the Wabash Valley Correctional Facility. His current medical conditions include, acid reflux disease, postnasal drip, chronic HCV mild-moderate restrictive airway disease, and antisocial personality disorder. He also sometimes complains of low back pain.

### A. *Hepatitis C*

Perry has been diagnosed with chronic HCV, which is a viral disease that causes inflammation of the liver. Dkt. 110-3, ¶ 6. Chronic HCV is treatable with Direct-Acting Antiviral oral medications ("DAAs"). *Id.* At the time the defendants responded to the motion for preliminary injunction, Perry's chronic HCV was being monitored but not treated with DAAs. *Id.* However, the defendants explained that Perry is in the next group of HCV patients scheduled to receive DAA treatment. *Id.* He has signed a medical consent form to be treated with DAAs. Dkt. 110-1, ¶ 8. Perry contends in reply in support of his motion for injunctive relief that he has been denied DAAs because he has too much Zantac for his gastroesophageal reflux disease ("GERD.") Dkt. 115. Acid suppressing medications such as Zantac cannot be taken with the antiviral therapy used

to treat HCV. Dkt. 121-1, ¶ 7. Perry is aware of this, as this information is stated in the consent of treatment that he signed. *Id.* Nursing staff has also explained to him that he cannot take Zantac or any other acid suppressing medication while he is receiving antiviral therapy. *Id.* His Zantac was previously prescribed "KOP," which means that he could keep the medication with him and take as needed. *Id.*, ¶ 8. However, to ensure that Perry does not take acid suppressing medications while receiving antiviral therapy, one of the nurses took Perry's KOP Zantac. *Id.* Perry can take Zantac or antiviral therapy, but he cannot take both. *Id.*, ¶ 9.

B. *Hepatitis B and A*

Perry believes he is a "carrier" of hepatitis B. Dkt. 110-1, ¶ 9. It appears that someone inadvertently entered in Perry's chart that he is a carrier of hepatitis B. *Id.* But, Perry does not have hepatitis B and he is not a carrier of hepatitis B. *Id.* Based on his lab results, Perry is immune from getting hepatitis B. *Id.* This means that Perry has, at some point in his life, received the hepatitis B vaccine. *Id.*

On March 21, 2019, Perry received a vaccine for hepatitis A, which should make him immune from contracting the virus. *Id.* ¶ 10. He will receive a follow-up hepatitis A vaccination in 6-12 months from initial injection. *Id.*

C. *Shortness of Breath and Chest Pain*

Perry sometimes complains of difficulty breathing with chest pain. Dkt. 110-1, ¶ 11. In March of 2018, an officer refused Perry's request for a breathing treatment. Dkt. 105-1, p. 11. In response to his grievance on this issue, Perry was told that this should not be an issue again. *Id.*, p. 12. Dkt. He has been prescribed rescue inhalers and is sometimes given breathing treatments for his difficulty breathing. Dkt. 110-1, ¶ 10. On February 1, 2019, Dr. Byrd sent Perry for a chest x-ray due to his complaints of difficulty breathing, chronic cough and chest pain. *Id.* The x-ray

was interpreted by an outside radiologist who determined that the x-ray was normal. *Id*. In March 2019, Dr. Byrd ordered pulmonary function test for Perry to determine how well his lungs are working. *Id*. The test indicated that Perry has mild restriction of the lungs. *Id*. Perry's Spirometry[2] is consistent with less than full inspiration/expiration while completing the test, which is not uncommon with spirometry. *Id*. Medical staff will repeat spirometry if ongoing complaints of shortness of breath or increased shortness of breath. *Id*. Perry also attributes his shortness of breath to anxiety over his incarceration. *Id*. Currently, Perry is prescribed an inhaler, which he reports relieves his symptoms of shortness of breath. *Id*. There is no clinical reason to have Perry evaluated by a "lung specialist." *Id*.

Perry's complaints of chest pain are often associated with his shortness of breath. Dkt. 110-1, ¶ 12. There are also times where Perry complains of chest pain that lasts for several months and radiates up and down the whole left side of his body. *Id*. None of Perry's complaints of chest pain have indicated a cardiac event, including a "heart attack." *Id*.

On March 22, 2019, Dr. Byrd obtained an electrocardiogram ("ECG") in response to Perry's complaints of chest pain for two months. *Id*. An ECG can detect irregularities in the heart rhythm ("arrhythmias"), blocked or narrowed arteries in the heart (coronary artery disease) that are causing chest pain or a heart attack, previous heart attack damage, and other problems with the structure of the heart. *Id*. The machine used to perform the ECG generates an interpretation. *Id*. However, the machine's interpretation cannot be relied upon for diagnosis, mainly because the parameters set by the manufacturer are too strict and do not allow for any variance. *Id*. Perry's

---

[2] Spirometry is a common office test used to assess how well someone's lungs work by measuring how much air they inhale, how much they exhale, and how quickly they exhale. Mayo Clinic, *Spirometry*, https://www.mayoclinic.org/tests-procedures/spirometry/about/pac-20385201 (visited July 2, 2019).

ECG interpretation stated the following: sinus bradycardia, left axis deviation, abnormal ECG. *Id*. Normal sinus rhythm means a normal heart rhythm with a normal rate of 60 to 100 beats per minute. *Id*. Sinus bradycardia means a normal heart rhythm with a rate of less than 60 beats per minute. *Id*. In this case, Perry's rate was 58 beats per minute. *Id*. A heart rate of 58 with a normal rhythm and no signs or symptoms indicating a problem with blood flow in and out of the heart is not alarming. *Id*. Perry's heart rate is generally in the normal range. *Id*. On March 20, 2019, when nursing staff evaluated Perry for his complaints of chest pain for two months, his heart rate was 96 beats per minute and his blood pressure was also normal at 120/84. *Id*. As for the left axis deviation, this is a very common abnormal ECG finding that can be a normal variant due to the patient's body shape and weight. *Id*. It can also be associated with an arrythmia or it can be a sign of a heart attack. *Id*. In Perry's case, he did not have an arrythmia and there were no other signs of a heart attack on the ECG and he had no symptoms of having a heart attack. *Id*. Dr. Byrd determined that there is no clinical reason to send Perry to be evaluated by a cardiologist. *Id*.

D. *Other Complaints*

Perry asks to be referred to a "brain specialist," but he has not complained of any symptoms that would indicate that he requires evaluation by a neurologist. *Id.* ¶ 13. Perry has also complained of bumps in the back of his throat and has requested an endoscopy. *Id.* ¶ 14. Dr. Byrd has explained to Perry that what he sees in the back of his throat are his lingual tonsils and taste buds. *Id*. Perry also complains of a sore throat with mucus. *Id*. Dr. Byrd has explained to Mr. Perry that he likely has postnasal drip from allergies and he has prescribed allergy medicine for that condition. *Id*. At this time, there is no clinical reason to send Perry to an ear, nose and throat specialist ("ENT") for these complaints. *Id*.

Perry has also complained of lumps and bumps all over his body and believes he has lymphoma. *Id.* ¶ 15. There is no indication that Perry has lymphoma. *Id*. Perry claims he has a family history of cancer, and other non-specific diseases, for which he seeks evaluation by a specialist; however, a family history, standing alone, does not necessitate evaluation by an outside specialist. *Id*.

### III. Discussion

As explained below, Perry has failed to establish his right to injunctive relief. Perry has not shown that he is likely to succeed on the merits of his claims, that he will suffer irreparable harm if immediate relief is not granted, or that his legal remedies are inadequate.

A. *Likelihood of Success on the Merits*

To state a valid Eighth Amendment claim for inadequate medical care, Perry must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A deliberate indifference claim is comprised of two elements: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). The defendants do not dispute that Perry suffers from serious medical conditions. To demonstrate deliberate indifference to a serious medical condition, Perry must show that medical decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [they] ... did not base the decision[s] on such a judgment." *Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017).

1. *Hepatitis C*

The defendants argue that Perry does not have a likelihood of success on the merits of his claims related to the care he is receiving for his HCV. In their initial response to the motion for a preliminary injunction, they argue that he will receive DAA treatment soon. In reply in support of

his motion, Perry asserted that he has been denied that treatment. The defendants explain that Perry cannot receive antiviral therapy while he is taking acid suppressing medication. In short, the evidence before the Court is that the defendants are willing and prepared to provide Perry with the request treatment for his HCV if he is not taking acid suppressing medications. Accordingly, no injunctive relief appears to be necessary as to this claim.

2. *Hepatitis B and A*

The defendants point out that Perry's lab results show that he is immune from getting Hepatitis B. They also state that he has received a vaccine for Hepatitis A and will receive a follow-up vaccination. Perry contends that he was given the Hepatitis B vaccine in 2002, but he did not receive the necessary follow-up vaccinations. He concludes therefore that he cannot be immune to Hepatitis B. In face of the evidence that Perry's blood tests show that he is immune to Hepatitis B, not that he has Hepatitis B, and that he has received a vaccination for Hepatitis A and will receive a follow-up vaccination, he has failed to show that the defendants have exhibited deliberate to these conditions. He therefore has not shown a likelihood on the success on the merits of these claims.

3. *Shortness of Breath and Chest Pain*

The defendants argue that Perry is receiving adequate treatment for his shortness of breath and chest pain. Perry has been prescribed rescue inhalers and breathing treatments for his difficulty breathing. He has also received a chest x-ray and a pulmonary function test, which did not indicate a need for further treatment. Perry also received an ECG for his complaints of chest pain. Perry's result showed a heartrate of 58 beats per minute. A heartrate of 58 with a normal rhythm and no signs or symptoms indicating a problem with blood flow is normal. The ECG also indicated a left axis deviation, which can either indicate normal function or can be a sign of a heart attack. Because

Perry had no other signs of a heart attack, Dr. Byrd states that he did not have one and does not need to see a cardiologist. Perry argues that because Dr. Byrd asserts that there are two potential reasons to explain the abnormal ECG result, one of which would indicate a serious heart condition, then he requires outside evaluation to determine whether he has a serious heart condition.

Perry has failed to show a reasonable likelihood of success on the merits of his claims regarding his shortness of breath and chest pain at this time. He has received diagnostic testing and treatment for his shortness of breath. He has not presented evidence that this testing or treatment is outside the standards of profession judgment. In addition, the defendants have presented evidence that Perry has received testing and evaluation for his complaints of chest pain. Dr. Byrd's conclusion that Perry does not need to see a cardiologist is based not only on his evaluation of the ECG, but on his understanding of the ECG when considered in conjunction with other indications of Perry's heart health. Because Perry has not presented evidence to suggest that this conclusion is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Dr. Byrd] ... did not base the decision[s] on such a judgment" he has failed to show a reasonable likelihood of success on the merits of this claim. *See Proctor*, 863 F.3d at 568.

### 4. *Other Medical Complaints*

Finally, Perry has not shown a reasonable likelihood of success on the merits of any of his other claims. He has not explained why he requires evaluation by a neurologist. In addition, Dr. Byrd has explained that the bumps in the back of his throat are his lingual tonsils and taste buds. Perry has also complained of lumps and bumps all over his body and believes he has lymphoma. But there is no clinical indication to believe Perry has cancer of any kind. His speculation is insufficient. He has therefore failed to show that he has a reasonable likelihood of success on the merits of these claims.

B. *Irreparable Harm*

The defendants also argue that Perry has not shown that he will suffer irreparable harm. "Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for . . . . [T]he injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). As already explained, the defendants have shown that they are ready and willing to provide him treatment for his HCV and that he is immune from Hepatitis B and has received a vaccination for Hepatitis A. He therefore cannot show irreparable harm based on any failure to treat or ensure his immunity to hepatitis. In addition, he has received evaluation and treatment for his complaints of shortness of breath and chest pain. He has not presented evidence that he will suffer any harm that cannot be repaired because of any alleged failure to treat these conditions. He also has not shown that he has cancer or a brain disorder that requires outside specialty care and thus has not shown any potential harm from these alleged conditions.

C. *Adequate Remedy at Law*

Finally, the defendants have shown that Perry has an adequate remedy at law for his medical complaints – he can seek monetary compensation for treatment he believes has been inadequate.

## III. Conclusion

The evidence before the Court at this stage is that Perry has received evaluation and treatment for the conditions that he complains of in this case. The defendants have indicated that he will receive treatment for his HCV. Perry has failed to present sufficient evidence to show that the care he has received is the result of deliberate indifference to his conditions or that he will suffer harm that cannot be remedied at law. Accordingly, his motions for injunctive relief, dkt.

[103], [105], [141], [145], [146], are each **denied.** His motions to supplement, dkt. [130], and dkt. [150], are **granted** to the extent that the proposed exhibits have been considered.

**IT IS SO ORDERED.**

Date: 10/17/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel