UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:18-cv-03373-JRS-TAB |
| GREGORY, et al. | ) ) ) |
| Defendants. | ) |

**Order Discussing Motions for Preliminary Injunction**

Plaintiff, Jason Seth Perry ("Perry") initiated this lawsuit alleging that his medical providers have been deliberately indifferent to a variety of medical conditions. He has filed two motions for a preliminary injunction. He seeks injunctive relief in the form of an order that the medical providers ("Medical Defendants") ensure that he be taken to an outside doctor for a liver ultrasound and a liver biopsy, to a cardiac specialist for further cardiac testing, and be treated for the "bumps" on his body.

**I. Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then

proceed to the balancing phase of the analysis. *Id*. In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*.

## II. Facts

### A. *Liver Condition*

Perry has been diagnosed with chronic Hepatitis C ("HCV"). Dkt. 412-1 ¶ 5. At an August 5, 2019, visit with Dr. Byrd, Dr. Byrd noted that he advised Mr. Perry likely has some level of fibrosis of the liver, but only a liver biopsy would be definitive. Dkt. 407 p. 112. Dr. Byrd also stated that the liver has some regenerative capacity, but once an organ is subjected to chronic inflammation, it will likely never return to normal. *Id.*

Perry has since completed a cycle of direct-acting antiviral medication. Dkt. 421-1 ¶ 5. After the treatment was completed, labs were ordered to ensure eradication of the virus. *Id.* ¶ 6. At first, there was some concern that Perry's HCV infection was not cured, but more recent labs have returned negative for HCV. *Id.* ¶ 7. Perry's tests for liver enzymes in June of 2020 were normal. *Id.* ¶ 8.

Dr. Byrd testifies that because Mr. Perry has been cured of HCV and his labs show normal liver function, he does not believe a liver ultrasound is required. Dkt. 412-1 ¶ 9. Further, because of Perry's lack of symptoms and normal liver enzymes, the results of a liver biopsy would not alter treatment plans. *Id.* Perry asserts that Dr. Byrd told him he is a CTP[1] Class A, dkt. 407 p. 119, which indicates compensated cirrhosis. Dkt. 407 p. 256.

---

[1] The CTP score is a tool used to help to determine the severity of cirrhosis. Dkt. 407 p. 256.

B. *Heart Condition*

Mr. Perry also alleges that he has a history of heart problems. Dr. Byrd testifies that in 2019, an EKG returned with a borderline abnormal finding. Dkt. 412-1 ¶ 13. In light of Mr. Perry's normal vitals, normal lab results, and normal appearance, however, Dr. Byrd states that there does not appear to be any significant cardiac abnormality. *Id*. Mr. Perry has been diagnosed with asthma, and at times has complained of shortness of breath, and has expressed anxiety. *Id.* Shortness of breath and anxiety can cause intermittent and mild chest pain, but Mr. Perry has not been diagnosed with any significant cardiac abnormality. *Id.* ¶ 14.

C. *Bumps*

Mr. Perry also complains of having "bumps" on his body that he believes are potentially cancerous. Dr. Byrd testifies that there is no indication that any of these bumps are cancerous or abnormal. Dkt. 412-1 ¶ 16. Dr. Byrd has never personally noticed or diagnosed Mr. Perry with an abnormal "bump" or any other lesion or abnormality consistent with cancer. *Id.* ¶ 17. If Mr. Perry had cancer to the extent that he was experiencing bumps all over his body, you would expect to see abnormal lab results, such as abnormal platelets, white blood cell count, lymphocytes, or other readings. *Id.* ¶ 18. Mr. Perry's lab results from June 4, 2020 were normal *Id.* This included a complete blood count and complete metabolic panel. *Id.*

### III. Discussion

As explained below, Perry has established his right to injunctive relief on his request for a specialist consultation regarding treatment for his liver. But his is not entitled to injunctive relief on his other claims.

**A. Likelihood of Success on the Merits**

The Medical Defendants argue that Perry cannot establish a likelihood of success on the merits of his claims. To state a valid Eighth Amendment claim for inadequate medical care, Perry must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A deliberate indifference claim is comprised of two elements: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). The defendants do not dispute that Perry suffers from serious medical conditions. To demonstrate deliberate indifference to a serious medical judgment Perry must show that medical decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [they] ... did not base the decision[s] on such a judgment." *Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017).

1. *Liver Condition*

The defendants argue that Perry does not have a likelihood of success on the merits of his claims related to his liver. Perry has received direct acting antiviral medication for his HCV diagnosis and lab results show that he now longer has HCV. Further, lab testing has revealed normal levels of liver enzymes in his blood. On the other hand, Perry points to Dr. Byrd's statement to him that he likely has some fibrosis of the liver and clinical guidance from the BOP which provides that a CTP Class A indicates cirrhosis of the liver. Because Dr. Byrd has told Perry that he likely has some fibrosis of the liver and other testing has indicated cirrhosis of the liver, Perry has provided sufficient evidence to show that he has a likelihood of success on the merits of his claim that he has not received adequate testing and diagnosis.

### 2. *Heart Condition*

The Medical Defendants next argue that Perry does not have any significant cardiac abnormality. In 2019, Perry had an EKG with a borderline abnormal finding. But, because of Perry's normal vitals, normal lab results, and normal appearance, further testing is not necessary.

Perry has failed to show a reasonable likelihood of success on the merits of his claims regarding his cardiac care at this time. He has received diagnostic testing and evaluation. He has not presented evidence that this testing or treatment is outside the standards of professional judgment. Dr. Byrd's conclusion that Perry does not need to see a cardiologist is based on his understanding of the EKG when considered in conjunction with other indications of Perry's heart health. Because Perry has not presented evidence to suggest that this conclusion is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Dr. Byrd] ... did not base the decision[s] on such a judgment" he has failed to show a reasonable likelihood of success on the merits of this claim. *See Proctor*, 863 F.3d at 568.

### 3. *Bumps*

Finally, the Medical Defendants argue that Perry does not have a reasonable likelihood of success on the merits of his claims regarding "bumps" on his body because there is no indication that the bumps Perry perceives are cancerous or abnormal. Further, Perry's lab testing had not revealed abnormal results that would be consistent with cancer. Perry therefore has failed to show a reasonable likelihood of success on the merits of his claims that he has untreated "bumps" on his body.

**B. Irreparable Harm, Inadequate Legal Remedies, and Balance of Harm**

The defendants also argue that Perry has not shown that he will suffer irreparable harm. "Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for . . . .

[T]he injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). "[H]arm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Whitaker By Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1045 (7th Cir. 2017) (internal citations omitted). "The moving party must also demonstrate that he has no adequate remedy at law should the preliminary injunction not issue." *Whitaker*, 858 F.3d at 1046. "This does not require that he demonstrate that the remedy be wholly ineffectual." *Id*. (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). "Rather, he must demonstrate that any award would be seriously deficient as compared to the harm suffered." *Id*. (quoting *Foodcomm*, 328 F.3d at 304).

Here, it is undisputed that Perry suffered from an HCV infection, which may have damaged his liver. If Perry has cirrhosis of the liver that is not being evaluated and treated, he is likely suffering unnecessary pain and continued delay in treating it may cause him irreparable damage. The Medical Defendants will suffer no significant harm by a referral to an outside physician or specialist to evaluate the condition of his liver. It is in the public interest to provide reasonable medical treatment for prisoners. Under these circumstances, the balance of equities tip in favor of Perry.

### III. Conclusion

For the foregoing reasons, Perry's motions for injunctive relief, dkt. [406], and dkt. [440], are **granted in part** to the extent that the Medical Defendants, or their designee with the authority to do so, shall refer Perry to an outside specialist to examine Perry and evaluate the condition of his liver. The motions to supplement Perry's motion for a preliminary injunction, dkt. [441], dkt. [447], and dkt. [458], are **granted** consistent with this ruling.

The Medical Defendants shall **report not later than April 10, 2021,** that the referral has been made and an appointment has been scheduled as promptly as reasonably possible, taking into account the specialist's schedule. The specialist's treatment plan shall be followed.

**IT IS SO ORDERED.**

Date: 3/11/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel